Magalski, Appellant, *v.* Olyphant Borough.

Submitted March 12, 1942.

Before KELLER, P. J., CUNNINGHAM, BALD-RIGE, STADTFELD, RHODES, HIRT and KENWORTHEY, JJ.

*William A. Skinner, Robert E. O'Brien* and *J. Desmond Kennedy,* for appellant.

*Harvey B. Lutz,* for appellee.

OPINION BY STADTFELD, J., July 27, 1942:

This is a workmen's compensation case.

The claimant is a carpenter. He had been regularly employed by the Holod Lumber Company for about eighteen years. When, on rare occasions, the defendant Borough of Olyphant needed carpenter work done, the claimant arranged to take time off from his employment at the Holod Lumber Company and did work for the Borough, and was paid by the Borough on the basis of the time he put in. The Borough required no continuous carpenter work and the only services performed by the claimant for the Borough in the entire calendar year 1938 were $20 worth in August and $12 worth in the latter part of December. This work in December consisted of fixing shelving, etc. at the Borough's light plant the first day, and working on a roof at the light plant the second day. While working on this roof on December 20, 1938, claimant fell and sustained a fractured heel bone which caused total disability for twenty-one weeks and five days.

The referee awarded compensation to claimant in the sum of $388.28, with interest, and ordered the defendant to pay a doctor bill of $87. Upon appeal, the Workmen's Compensation Board reversed the referee, and dismissed the claimant's petition, which dismissal was affirmed by the Court of Common Pleas of Lackawanna County, by LEACH, P. J. This appeal followed.

Section 104 of the Workmen's Compensation Act, of June 2, 1915, P. L. 736, as amended by the Act of June 4, 1937, P. L. 1552 (77 PS §22) excludes from workmen's compensation coverage "persons whose employment is casual in character and not in the regular course of the business of the employer."

The board made, inter alia, the following finding: "Seventh: The work the claimant was doing for the defendant at the time he was injured, December 20, 1938, was casual in nature and no part of the regular course of the defendant's business." The board also made the following conclusion of law: "Second: Since the work that the claimant was doing for the defendant at the time of his injury December 20, 1938, was casual and not in the course of the defendant's regular business, the claimant was not an employee of the defendant within the meaning of the Workmen's Compensation Act of 1915, as amended, and therefore, not entitled to compensation."

Claimant's testimony, that "me and the council had an arrangement to do all the carpenter work that there was to be done in the borough office, houses, and fire houses, bridges, and electric light plant" was contradicted by claimant's own testimony, that Joe Lesko also did carpenter work for the borough; and was too vague in its terms to have any legal effect. Furthermore, the "arrangement" could have no legal or binding effect because it purported to be with "the Council" of a municipality, and yet claimant produced no evidence of due corporate action by the borough council in the form of either an ordinance, resolution or minutes—which would be the only way in which a "long-term" or exclusive employment such as claimant alleges could have been created. *Nuebling et al., to use, v. Topton Boro.*, 323 Pa. 154, 185 A. 725.

The testimony of Mr. Russen, President of Borough Council, did not tend to prove any due corporate action

or any legal contract for the claimant's services by the defendant Borough. Mr. Russen testified that the Borough did not have any steady carpenter work. He also testified that the claimant was not the only carpenter called in when work was required, but that a Joe Lesko was also procured at times—directly negativing the claimant's own assertions that claimant was to do all of the Borough's carpenter work himself.

The Workmen's Compensation Board said, in its opinion, all that claimant's "arrangement with Borough" signified was that claimant "was the tradesman to be favored when necessity arose and that this did not constitute a contract of employment."

In *Cochrane v. William Penn Hotel,* 339 Pa. 549, 552, 16 A. 2d 43, the Supreme Court said, "If the work is not of an emergency or incidental nature but represents a planned project, and the tenure of the service necessary to complete it and for which the employment is to continue is of fairly long duration, the employment is not casual ......"

The record does not show the nature of the work done by claimant in August for which he was paid $20; but the very fact that claimant did no other work for the Borough between January and December of the same year conclusively shows the work could not have been "a planned project" or of "fairly long duration" within the words of the Cochrane case. Similarly, with regard to the December work, claimant himself testified that the first day he "fixed shelving and moved different stuff", and that on the second day he "helped on a roof". These jobs were neither "planned projects" nor of long duration, and, to use the words of the Cochrane case, were obviously of an "incidental or emergency nature". The claimant himself testified, that his work for the Borough was emergency work. As such, under the discussion by the Supreme Court in the Cochrane case, it was still "casual" work.

Was the claimant employed in the "regular course of the business" of the Borough?

The Supreme Court pointed out in *Blake v. Wilson*, 268 Pa. 469, 479, 112 A. 126, that the word "regular" in the statutory provision, "not in the regular course of the business of the employer" does not qualify the word "business", but the course of the conduct of that business. The question, then, is whether the claimant in the case at bar was employed not merely in or about the borough's "business" or "regular business", but whether he was employed in the regular course of the borough's business.

Appellant concedes in his brief, that the making of temporary or occasional repairs to the property of a private individual or corporation is held to be not in the regular course of the business of the owner—as, for example, painting rented houses *(Ronan v. Eddy, Admr.,* 136 Pa. Superior Ct. 436, 7 A. 2d 534) ; carpenter work on a house owned by a church and rented to tenants *(Williams v. Baptist Church,* 123 Pa. Superior Ct. 136, 141, 186 A. 168) ; and carpenter work rebuilding a storage room in an ice plant *(Butera v. Western Ice & Utilities Company et al.,* 140 Pa. Superior Ct. 329, 14 A. 2d 219).

Appellant tries to escape the ruling effect of the foregoing decisions by asserting that simply because a borough is a municipal corporation, the regular course of its business is somehow expanded so as to include every single act done by a borough, no matter how infrequently or briefly or incidentally.

Appellant fails to distinguish (1) between activities in which a borough has common law or statutory duties toward the public, and those in which its only "duty" is measured by its own self-interest; and (2) between the incidental, trivial, or emergency activities, on one hand, and the sustained, ordinary and repetitious activities, on the other.

It is an entirely different matter, however, to allege that because a municipality is the owner of buildings— whether they be a borough hall or an electric light plant —that the infrequent and occasional repair or renovation required by these buildings is in the "regular course of the business" of the municipality. With respect to these buildings, the municipality clearly has no duty to make repairs. If the defendant borough wished to leave a hole in the roof of its electric light plant, that was its affair, and no one else's. There is obviously no justification, therefore, for appellant's seeking to place his work while repairing the light plant roof in the "regular course" of the borough's business on the basis of any municipal duty. The situation of the repair of streets is not analogous to that of the repair of a building, as to which the municipality has no common law or statutory duty beyond that of any other property owner.

The court below held in the instant case that the making of repairs to this publicly owned municipal building was "incidental" and therefore not a part of the regular course of the business of this municipal corporation. In *Callihan v. Montgomery*, 272 Pa. 56, 72, 115 A. 889, a case frequently cited on the question of what constitutes the "regular course of business" and whether the making of repairs to buildings or machinery (in this case, repairing an engine to run a pump) is in the regular course of the business of the employer, the court by Chief Justice MOSCHZISKER said: "The legislature evidently intended, by the use of the words 'regular course,' to give them some definite significance and the most natural meaning is that they refer to the normal operations which regularly constitute the business in question, excluding incidental or occasional operations arising out of the transaction of that business, such as, now and again, repairing the premises, appliances or machinery used therein. While repair

work may be considered an important incident to any business using machinery, and, in some cases, may enter into the customary operations of such a business (for example, when men are engaged as regular employees for the purpose of keeping the machinery in order), yet the repairs we are here considering were no part of the regular course of the business conducted by defendant, which is producing oil; they represent merely an odd job, incidental to that business, but not part of the work ordinarily done by or under the control of the employer in this particular case."

We are of the opinion that the board and the court below correctly found that claimant's employment was both casual and not in the regular course of the borough's business.

The assignments of error are overruled and judgment affirmed.