FRANK BLACK, d/b/a Frank Black Service Station, and Aetna Casualty & Surety Company, Appellants,

*v*

MRS. ROBERT (LOUISE) CORDER, Appellee.

399 S.W.2d 762.

(*Jackson*, April Term, 1965.)

Opinion filed February 18, 1966.

JOHN C. ROBERTSON, Memphis, for Frank Black, d/b/a Frank Black Service Station, and Aetna Cas. & Surety Co., HARDISON, ROBERTSON & HARKAVY, Memphis, of counsel.

JOHN PARKER HILLS, Memphis for Mrs. Robert (Louise) Corder, DANN & HILLS, Memphis, of counsel.

MR. JUSTICE DYER delivered the opinion of the Court.

This is a Workmen's Compensation case. The facts are as follows:

Frank Black owned and operated a combination service station and appliance store located at 2885 Summer Avenue in Memphis, Tennessee using, in this business, seven to nine employees. He decided to build a retaining wall across the rear of this property, in order to stop erosion of dirt and water, and also to enlarge the building housing the appliances.

Black was not experienced in construction work. Robert Corder and Vernon Crain, normally employed by a construction company, were experienced in such work. At this particular time Corder and Crain were, between jobs, with their normal employer and Black contacted them in regard to this work of enlarging the building and constructing the retaining wall.

These parties agreed in effect Corder and Crain would take charge of this work and be paid for the hours worked

at the rate of $4.00 per hour. Additional helpers needed by Corder and Crain would be paid at the rate of $1.25 per hour. Five additional helpers were used in this work, making a total, including Corder and Crain, of seven working on this job. The hours worked by all seven men were given, at normal intervals, to Black who paid them out of funds from the service station and appliance business. Black withheld social security and income tax payments due on the amounts paid all seven of these men. The materials to be used on this job were charged to Black and he paid all the bills for same. Corder and Crain were not responsible for the completion of this job and in fact could have quit at any time. Black retained the right to terminate the employment of any of these seven men or to stop the construction. Corder and Crain had told Black the work would cost about $5500.00 and take about seventy five days to complete. Under the conditions outlined above the work began on 27 August 1964.

On 4 September 1964 Robert Corder, in the course of this construction, received injuries causing his death. This suit involves the question of whether the widow of Robert Corder, deceased is entitled to death benefits. The Chancellor found Appellants liable resulting in this appeal.

The Chancellor found, (1) that Corder was an employee and not an independent contractor, and (2) that insofar as the service station and appliance business, operated by Black, was concerned, Corder was a casual employee and excluded from coverage by T.C.A. 50-906(b). Then the Chancellor said:

An employer can be engaged in two occupations at the same time, either or both of which may be within the coverage of the Act. * * * The proof shows that Black

embarked upon this business, employed five or more employees in this venture, paid their wages, retained the right to control the operations, and that either Corder or Crain, or both of them, as foreman, was engaged in the construction business. Considering all the foregoing and recognizing the canons of construction applicable, this Court finds that Corder was not a casual employee but was covered under the Workmen's Compensation Act. (Chancellor's Memo)

The Chancellor found Black, by this construction project, has in fact gone into another and separate business from his unsual business of the service station and appliance store.

It is not seriously disputed an employer may be engaged, at one and the same time, in more than one business or occupation. *D. M. Rose & Co. v. Snyder,* 185 Tenn. 499, 206 S.W.2d 897 (1947); *Mason-Dixon Lines v. Lett,* 201 Tenn. 171, 297 S.W.2d 93 (1956). In the *Lett* case the court said:

There is express affirmative evidence that Mason-Dixon was engaged in the business of commercial trucking. But this, per se, is not evidence that it was not also engaged regularly in some other business. 201 Tenn. 171, 297 S.W.2d 93.

The issue here is whether, considering the entire record, there is material evidence to support the finding of the Chancellor that Black had gone into the ''construction'' business. If there be such evidence it is apparent the required number were employed in the ''construction'' business to bring it within the terms of our Workmen's Compensation Statutes; nor can it seriously be argued Corder, if an employee and not an independent

contractor, was a regular and not a casual employee of this "construction" business.

The case of *Brady v. Reed,* 186 Tenn. 556, 212 S.W.2d 378 (1948) is analogous to the case at bar. In the *Brady* case the defendant husband operated a trucking business and the defendant wife operated a grocery business. These defendants, upon deciding to build a house for themselves, purchased enough material to build not only their own house but a few other houses as well. Defendants began construction with their own house to be constructed first and the petitioner-employee was injured while working on this first house. The court said:

> When we consider the entire record we find material evidence to justify the conclusion that they were in the "building business." It is not material that one house, the first one constructed, was to be their home and that the others were to be sold. 186 Tenn. 560, 212 S.W.2d 380.

In *Snavely v. Redemptorist Fathers,* 151 Pa.Super, 625, 30 A.2d 724 (1943), the defendant was a religious organization chartered for the purpose of public worship, religious and educational instruction and for missionary undertakings. Plaintiff, a carpenter, was employed to build a church and a caretaker's house on defendant's premises under the supervision of a superintendent and architect. While working, the plaintiff suffered an injury. The court held:

> [T]he word "regular" modifies "course" not "business." The question is, therefore, whether an employment is in the regular course of defendant's business, not whether the employment is in the course of defendant's regular business. Assuming, for the sake of

argument, that the employment was not in the course of its regular business, which is the support of religious worship and religious and educational instruction and missionary labors, still, at the time claimant was hired, the defendant was indubitably engaged in the business of building a church and caretaker's house, as the board properly found. 151 Pa.Super. 625, 30 A.2d 724.

The case of *Locken v. Department of Labor and Industries,* 58 Wash.2d 534, 364 P.2d 232 (1961), is similar to the present case. In this case the employer owned and operated a farm and also a lime-hauling and spreading business. He also owned some unimproved land near a school which school was contemplating expanding its program. He believed he could sell the land at a higher price if he cleared it. He hired four men to clear the land, one of whom was his brother acting as the foreman, but was a carpenter by trade. The brother was injured. The court said:

"Business" as used in the workmen's compensation act means an activity having a gain or profit motive, rather than being merely incident to some aspect of living as such.

The motive for the land clearing, in this case, was the hope of a monetary profit from the sale of cleared land. The seller, of course, could make no subsequent use of the land for any purpose. Of course, single ventures, such as this, inevitably present difficulties of classification as to whether or not they are "businesses". This is because ordinary businesses have duration and continuity.

The lack of duration is the troublesome element in the instant case. The workmen's compensation act makes no reference to the duration of a business. If this element is to be a requirement for the applicability of the act, it must be judicially added thereto by us.

We hold that a land clearing operation motivated by the hope of a profitable sale of the land, which has a fourman payroll, is an operation of sufficient magnitude to constitute a business within the purview of the workmen's compensation act.

The case at bar will turn on whether Black had gone into the construction "business" as this word "business" is used in applying our Workmen's Compensation's Statutes. The most troublesome point here is the same as in the *Locken* case, that is, the duration of this business. Under this record it is apparent Black was not regularly engaged in the construction business; but it is also apparent this was a project of some magnitude, and while not having the continuity of an ordinary business, yet it would require considerably more time than just a small project finished in a few hours as a few days.

We think there is material evidence, under this record, to support the Chancellor's finding and award of benefits thereunder. The points considered in this opinion are determinative of this case and all assignments of error are overruled.

Judgment affirmed.